IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL LYNN BRADDEN,   )
  ID # 1171646,     )
    Petitioner,    )
vs.          )   No. 3:06-CV-1682-L (BH)
          )     ECF
NATHANIEL QUARTERMAN, Director, )  Referred to U.S. Magistrate Judge
Texas Department of Criminal   )
Justice, Correctional Institutions Division, )
    Respondent.   )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementa-tion thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge May 29, 2003, convictions for robbery in Cause No. F03-00097-JH and evading arrest in Cause No. F03-00301-JH. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B. Procedural and Factual History

In January and February of 2003, the State indicted petitioner for robbery and for evading arrest. (Trial Transcripts at 2). After petitioner pled not guilty to the charged offense, on May 29, 2003, petitioner was tried before a jury, found guilty, and sentenced by the jury to a life sentence for

the robbery conviction and to twenty years for the evading arrest conviction.  *Id.* at 32, 37.

The state appellate court recounted the evidence presented at trial as follows:

> Anna Lujan and Catherine Pronske, employees at Maxwell Books, opened the bookstore at 9:00 a.m. on August 10, 2002.  Lujan testified that she noticed a "shifty" black male standing outside the store and made eye contact with him.  Shortly afterward, a black male wearing a mask entered the store, pointed a gun at the two women, and demanded money.  According to the women, the mask appeared to be a black stocking-type cap pulled down below the man's nose with holes cut out for his eyes.  The robber wore dark pants and a distinctive diamond-patterned shirt, which Lujan recognized as the same shirt worn by the "shifty" man outside the store.  Lujan and Pronske emptied the cash registers and the robber stuffed the paper money into his pants pockets.  The robber demanded the coins as well.  As Lujan handed the robber the coins in Maxwell Bookstore bags, a customer and his son entered the store.  The robber told the customer "don't even think about it" and left the store.  Pronske called 9-1-1, and Lujan and the customer saw the robber get into a four-door brown car that displayed a handicapped license plate.

> Officer Smith received a dispatch regarding a black male suspect driving a brown four-door vehicle with handicapped license plates.  Smith, driving an unmarked police vehicle, observed a brown four-door vehicle at an intersection with a four-way stop.  The black male driver of the car indicated that Smith should pull through the intersection, but Smith motioned for the other driver to go first.  Smith testified that he got a good look at the driver at this time.  Smith saw that the vehicle matched the description of the suspect's vehicle, including handicapped plates.  Smith followed the vehicle and activated his lights and siren.  The vehicle drove onto a dead-end street.  The driver abandoned the vehicle and jumped over a fence.  Smith secured a vehicle, where he found a stocking mask and a large amount of change inside Maxwell Books bags.

> Officer Thomas responded to Smith's dispatch.  He testified that as he turned into the alleyway adjacent to the fence that the suspect jumped, a man matching the robber's description almost ran into his patrol car.  The man was wearing a diamond-patterned shirt.  Thomas pursued the man through the neighborhood.  Several residents pointed to where the suspect had jumped a fence into the backyard of a residence.  Through the fence, Thomas saw Bradden

sitting on the patio, not wearing a shirt. When backup arrived, Thomas handcuffed Bradden. Police found the diamond-patterned shirt in the next yard. The owner of the house told the officers that she had never seen Bradden before. The officers put the shirt over Bradden's head and walked him through the house. Smith identified Bradden as the driver who abandoned the vehicle and jumped the fence.

The car was not registered to Bradden. Thomas testified that he found a gun (a BB gun) just outside the first fence the suspect jumped. Bradden testified in his own defense. According to Bradden, he was walking for exercise wearing only a pair of black pants and his house shoes. He was in an alley near his home when a police car stopped and the officer asked him for identification. He admitted that he had crossed the yard, but claimed that the gate was unlocked. He testified that the police arrested him, paced someone else's shirt over his head, and walked him through the house. He admitted to four previous convictions, two for robbery and two for aggravated robbery.

*Bradden v. State*, Nos. 10-03-00346-CR, 10-03-00347-CR (Tex. App.–Waco, Dec. 8, 2004, pet. denied).

In his direct appeal, petitioner challenged the legal and factual sufficiency of the evidence and the use of a 1972 conviction to impeach him during his testimony at trial. The Tenth District Court of Appeals affirmed petitioner's conviction in an unpublished opinion. *Id.* On January 4, 2006, petitioner filed state applications for writ of habeas corpus in both his robbery and his evading arrest cases in which he raised the same issues he raises in his federal petition. (S.H.Tr. I[1]:18-20; S.H.Tr. II:16-18). The Court of Criminal Appeals denied petitioner's state application without written order on the findings of the trial court without an evidentiary hearing. *Ex parte Bradden*, Nos. WR-44,402-03, -04 (Tex. Crim. App. April 12, 2006).

---

[1] "S.H.Tr. I" refers to the state habeas transcript in the robbery case, and "S.H.Tr. II" refers to the state habeas transcript in the evading arrest case.

On September 14, 2006, petitioner filed the instant petition for federal habeas relief. Respondent filed an answer on December 28, 2006, (*see* Answer) and provided the state-court records. Petitioner filed a reply to that motion on January 26, 2007. (*See* Reply). Petitioner also filed a memorandum in support of his petition on December 19, 2007.

## A. Substantive Issues

Petitioner asserts that: (1) he is actually innocent of robbery and evading arrest; (2) the evidence is legally and factually insufficient to support his convictions for robbery and evading arrest; (3) his trial counsel provided ineffective assistance of counsel; (4) the cause numbers in the enhancement paragraphs in the indictment were incorrect; (5) the State failed to disclose exculpatory evidence to the defense; (6) his constitutional rights were violated because he was not permitted to testify at the grand jury proceedings; (7) the prosecutor argued a theory at trial that was not alleged in the indictment; (8) the State exceeded the 180-day time limit for proceeding to trial; (9) the jury pool from which petitioner's jury was picked was not a fair cross-section of the community; and (10) the trial court erred when it permitted the prosecutor to impeach petitioner with a 1972 conviction. Petitioner also requests an evidentiary hearing.

## B. Exhaustion

Respondent alleges that petitioner has failed to exhaust his first claim for relief at the state level because he bases his claim in federal court on evidence not presented to the state court.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must

issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  ACTUAL INNOCENCE

In his first claim, petitioner argues that he is actually innocent of robbery and evading arrest. Specifically, petitioner asserts that the City of DeSoto's magistrate hearing certificate, which he has attached as an exhibit, indicates that petitioner was in jail at 9:30 a.m. on August 10, 2002, whereas two police officers testified at trial that they were chasing petitioner through a neighborhood at that time. Accordingly, petitioner contends that this is proof that he could not have committed the crimes with which he was charged. Petitioner further contends that the fact that he has facial hair, but the robber did not, that his fingerprints were not retrieved from the gun, that petitioner did not

have any of the stolen money or the gun on him when arrested, and that none of the witnesses in the bookstore could identify the robber because he wore a mask is all further evidence that he is actually innocent of robbery and evading arrest.

## A.  Procedural Bar

The State responds initially that petitioner is procedurally barred from raising a portion of this claim for failure to exhaust this claim because he did not present the magistrate certificate as support for this claim at the state level.  Procedural default occurs when a petitioner fails to exhaust all available state remedies *and* the state court to which he would be required to petition would now find that the claim is procedurally defaulted.  *Bledsoe v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).  A habeas petitioner has failed to exhaust his state court remedies if he presents "material additional evidentiary support" for his claim to the federal court.  *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996).  Nevertheless, under 28 U.S.C. § 2254(b)(2), a federal petition for a writ of habeas corpus may be denied on its merits, notwithstanding the petitioner's failure to exhaust state court remedies.  *See* 28 U.S.C. § 2254(b)(2).  As petitioner is not entitled to relief on the portion of this claim that is unexhausted, this Court addresses the entire claim on its merits.

## B.  Merits

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding.  The Court assumed for the sake of argument that in a capital case a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim.  The Court stated

that the threshold showing for such an "assumed right" would be "extraordinarily high." *Id.* at 417. The Court then concluded that conflicting affidavits, submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18.

Since *Herrera* was handed down by the Supreme Court, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001). Accordingly, under both Supreme Court and Fifth Circuit case law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, the State of Texas does have an avenue in which to pursue actual innocence claims. In *State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief, providing that a petitioner establish as a threshold that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Here, the state habeas court denied petitioner's actual innocence claim on its merits (S.H.Tr. I:170, S.H.Tr. II:128; *Ex parte Bradden*, slip op. at 1).

Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to such relief. Most of the evidence petitioner presents is not new evidence. Rather, petitioner essentially argues that the evidence to convict him is insufficient

based on the existence of different or contradicting evidence. This is not new, credible evidence of actual innocence. Furthermore, with regard to the magistrate's certificate, petitioner's argument that this is evidence of his innocence is not persuasive. First, on the certificate, in what is apparently the magistrate's handwriting, it is noted that petitioner was arraigned at August 11, 2002 at 9:45 a.m., and it is further handwritten on this document that the date and time of the arrest was "8 10 02 @ 9:30." (*See* Defendant's Ex. #1). A handwritten notation that petitioner was arrested at around 9:30 on August 10th is hardly evidence that he was in jail at 9:30 a.m. on that date. Second, and more importantly, petitioner has never contested the fact that he was arrested by the officers in the backyard of a house in DeSoto, Texas on the morning of August 10, 2002, for robbery and evading arrest. Instead, petitioner has always maintained, including in his testimony at trial, that this was a case of mistaken identity. Therefore, whatever time he was arrested on that date has no bearing on his guilt or innocence. Petitioner is not entitled to relief on the basis of this claim.

## IV. SUFFICIENCY OF THE EVIDENCE

Petitioner next asserts that the evidence is legally and factually insufficient to support his convictions. In particular, petitioner asserts that there is insufficient evidence that he committed the robbery because: 1) the witnesses could not identify the robber because he wore a mask; 2) the witnesses testified that the robber was clean-shaven whereas petitioner had a mustache; 3) when petitioner was arrested he did not have the money taken from the store nor the mask on him; 4) petitioner's fingerprints were not on the gun; and 5) the witnesses testified that the robber was taller than 5'6", which is petitioner's height. Petitioner contends that the evidence is insufficient to support a conviction for evading arrest because the State failed to prove that petitioner operated the vehicle that left the crime scene and that he knew that a police officer was trying to arrest him.

With regard to petitioner's factual sufficiency arguments, the Fifth Circuit has held that, on federal habeas review, the legal sufficiency standard and not the state-law factual sufficiency standard is used. *See Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002). In *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

In essence, petitioner asserts that the evidence is insufficient to support his convictions because the State presented primarily circumstantial, rather than direct evidence, of his guilt and because there was conflicting testimony presented at trial. Under the *Jackson* standard, however, the jury in petitioner's trial had the responsibility of weighing the evidence presented and resolving conflicts in testimony. A federal habeas court should not substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). When the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of both robbery and evading arrest based on the testimony of the State's witnesses, which included a witness who identified him as the man standing outside of the store shortly before the robbery wearing the clothes the robber wore, a police officer who identified petitioner as the driver of the brown car that he chased through a neighborhood and as the man who jumped from the car, and a police officer who identified petitioner as the man running through an alley. Moreover, money in two bags with the bookstore's name on them were found inside of the car,

along with the mask the witnesses testified that the robber wore, the gun was found near the first fence that the suspect jumped, and the shirt was found near the last fence the suspect jumped. Furthermore, there was testimony that petitioner's DNA was found in numerous places on the shirt and mask, (R. I:135-145), and the woman who owned the house behind which petitioner was found testified that the gate to her yard was locked, (R. I:123-26). All of this evidence was in contrast to petitioner's story that he was out walking and was arrested for something he did not do while walking through someone else's backyard.

On direct appeal in this case, after identifying the *Jackson v. Virginia* standard, the Tenth District Court held that the evidence was legally sufficient to support petitioner's convictions for robbery and evading arrest because the state may prove identity with circumstantial evidence and because the jury could rationally have found petitioner guilty of both. *Bradden v. State*, slip op. at 4-5. This is not an unreasonable application of the *Jackson* standard. Accordingly, petitioner's claim entitles him to no habeas relief.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In his next claim, petitioner asserts that he received ineffective assistance of counsel at trial because: 1) defense counsel did not know that three witnesses at trial would identify petitioner as being the person outside of the store, in the brown car, and in the alleyway; 2) counsel did not request a police line-up before trial at which time she would have learned about the witnesses; and 3) counsel discriminated against petitioner because he is African-American.

To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether counsel's

performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).

At the state habeas level, petitioner's trial attorney submitted an affidavit. In this affidavit, counsel states that prior to trial, she watched the in-car videotape from the squad car. She further states that she was provided a list of the State's witnesses before trial, and that during the examining trial held on August 27, 2002, an officer identified petitioner as the man he saw driving the brown car and as the man found in the backyard of a house. Finally, counsel states that she cross-examined the witness from the store who identified petitioner as the robber and the two police officers in an effort to prove misidentification, she obtained an investigator who interviewed several witnesses, including ones near the house where petitioner was arrested, she personally visited the crime scene and followed the path the alleged robber took afterwards, and she filed several pre-trial motions and obtained rulings on them. (S.H.Tr. II:130-32).

At the state habeas level, the trial court found that counsel is a trustworthy person, that her

statements in her affidavit were worthy of belief, and that the statements were true and correct statements. (S.H.Tr. I:169). The court further found that petitioner was represented by an attorney "who exercised all of the skill and expertise which one could reasonably of an attorney" and that petitioner was not denied his right to effective assistance of counsel. (S.H.Tr. I:170). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. *See Ex parte Bradden*, slip op. at 1. This is not an unreasonable application of the *Strickland* standard. Petitioner has presented no evidence that his attorney discriminated against him because he is African-American. Without any evidence of such discrimination, petitioner has not shown that the state court's decision was an unreasonable application of the *Strickland* standard. Furthermore, the record before this Court is that defense counsel was aware of the witnesses who were going to testify at trial before trial began, was aware before trial that an officer would identify petitioner as the person who drove the car, watched the videotape of the car chase filmed from the officer's car before trial began, and investigated the case sufficiently. She also questioned the witnesses who testified about their identification of petitioner as the suspect, including his facial hair, height, and clothing, in a sufficient manner. (R. I:42-44, 45, 58-59, 64-65, 86-89, 105-07, 113). For the foregoing reasons, petitioner's claim of ineffective assistance of counsel entitles him to no habeas relief.

## VI. ENHANCEMENT PARAGRAPHS

Petitioner argues that the cause numbers listed in the two enhancement paragraphs contained in the two indictments are incorrect and that his indictments were therefore false. The indictments allege that petitioner was convicted of aggravated robbery on January 15, 1979, in cause number F78-7309-IH, and convicted of robbery on December 8, 1972, in cause number C-72-10804-

H. (S.H.Tr. I:182; S.H.Tr. II:140). Petitioner contends that these cause numbers should have been F-72-10804-IH and F-78-07309-IH, respectively.

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). Federal courts, nevertheless, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that that court passed on the merits of the sufficiency issue. *Id.* at 598-99. Moreover, in a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Petitioner does not allege that he was not convicted of the two convictions contained in the enhancement paragraphs. To the contrary, he pled true to both paragraphs. (R. I:196-97). Likewise, petitioner does not contend that because the cause numbers were allegedly incorrect, he received insufficient notice that the State intended to enhance the potential punishments for the crimes if he should be convicted. In that regard, the indictments also stated the dates of the convictions, the court and county in which he was convicted, and the full name under which he was convicted. Instead, petitioner complains of potential minor clerical errors. Petitioner presents no evidence to support his assertions that there are, in fact, clerical errors contained in the cause numbers. Regardless, these potential errors did not divest the convicting court of its jurisdiction. The state habeas court denied this claim on its merits. (S.H.Tr. I:170; S.H.Tr. II:128; *Ex parte Bradden*, slip op. at 1). That decision is not contrary to federal law. Petitioner is not entitled to relief on this basis.

## VII. EXCULPATORY EVIDENCE

Petitioner argues that the State failed to provide exculpatory evidence to the defense prior to and at trial. In particular, petitioner contends that the State did not provide the City of DeSoto's magistrate hearing certificate and the police report to the defense, failed to inform the defense that three witnesses would identify him at trial, and failed to play the videotape from Officer Thomas's police car.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression of evidence favorable to the accused and material to either guilt or punishment by the State violates a defendant's due process rights under the federal constitutional. Under *Brady*, the prosecution has the duty to turn over to the defense both exculpatory and impeachment evidence, whether or not it was requested by the defense. *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985). Such evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the verdict. *Bagley*, 473 U.S. at 678; *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998).

With regard to the information regarding the three witnesses who identified petitioner as the man they saw that morning, this evidence was not exculpatory evidence, and the prosecution had no duty under *Brady* to provide this information to the defense. As to the videotape from Officer Thomas' car, as opposed to the videotape from Officer Smith's car that was shown at trial, petitioner has failed to show that such a videotape exists. Moreover, petitioner alleges that it would show that he did not "almost" run into the car, as Thomas testified; petitioner has not shown that even if true, this would create a reasonable probability that he would not have been convicted had the jury been

aware of it. Further, the State did not suppress the magistrate certificate reflecting that petitioner went before the magistrate judge at 9:45 a.m. on August 11, 2002, because the record reflects that the defense was aware of it at trial and attempted to have it admitted as an exhibit. (R. I:164-65). Finally, the State also did not suppress the police report because it was provided to the defense at trial. (R. I:87). The state habeas court denied this claim on its merits. (S.H.Tr. I:170; S.H.Tr. II:128; *Ex parte Bradden*, slip op. at 1). That decision is not contrary to federal law, and petitioner is not entitled to relief on the basis of this claim.

## VIII. GRAND JURY PROCEEDINGS

Petitioner contends that his constitutional rights were violated because he was not permitted to testify at the grand jury proceedings, which resulted in petitioner being indicted for robbery and evading arrest. The Fifth Circuit has held that an accused has no right to appear before the grand jury in order to state his or her case. *United States v. Donahey*, 529 F.2d 831, 832 (5th Cir. 1976); *see also United States v. Fritz*, 852 F.2d 1175, 1178 (9th Cir. 1988). The state habeas court denied this ground on its merits (S.H.Tr. I:170; S.H.Tr. II:128; *Ex parte Bradden*, slip op. at 1), and this conclusion is not contrary to federal law. This ground for relief should be denied.

## IX. PROSECUTION THEORY AT TRIAL

In his next ground for relief, petitioner argues that his constitutional rights were violated because the prosecution argued a theory to the jury during closing arguments that was not included in the indictment. Specifically, petitioner contends that the prosecutors argued that petitioner was guilty of robbery because he placed the victims in fear of bodily injury or death, but the phrase "or death" was not included in the robbery indictment.

Without determining whether or not such an error would rise to the level of a federal constitutional violation, this Court has reviewed the record of petitioner's trial and finds that neither of the two prosecutors who gave closing statements at trial made any argument that petitioner placed the victims in fear of death. Rather, the prosecutors argued the issue of identity. (R. I:183-87, 191-95). The state habeas court denied this ground on its merits (S.H.Tr. I:170; S.H.Tr. II:128; *Ex parte Bradden*, slip op. at 1), and this conclusion is not contrary to federal law. This ground for relief should also be denied.

## X. SPEEDY TRIAL

Petitioner next argues that his right to a speedy trial was violated because the State did not try him on the robbery and evading arrest charges within 180 days of the dates of the indictments, as state law requires. Instead, petitioner asserts that he was in jail for over nine months from the time he was arrested on August 10, 2002, until he was tried on May 29, 2003.

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court set forth the test for determining whether the constitutional right to a speedy trial under the Sixth Amendment has been violated. Under this test, a court must balance the following four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. *Id.* at 530. The Supreme Court also held that, to some extent, the length of delay acts as a triggering mechanism, whereby a presumptively prejudicial delay would require a court to examine the other factors. *Id.* The Supreme Court further stated that the failure of a defendant to assert his speedy trial right will make it difficult for him to prove that he was denied his right to a speedy trial and that, with regard to prejudice, the speedy trial right is designed to prevent oppressive pre-trial incarceration, minimize anxiety and concern, and limit the possibility that the defense will

be impaired. *Id.* at 532.  The Fifth Circuit has held that, generally speaking, a delay of one year triggers a speedy trial analysis under *Barker v. Wingo*.  *See United States v. Lucien*, 61 F.3d 366, 372 (5th Cir. 1995); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).  Pre-indictment delay does not raise a Sixth Amendment right to speedy trial issue. *Id.* at 370.

In the instant case, it appears that petitioner was tried within 180 days of the dates of the January and February 2003 indictments.  Regardless of state law, in order to establish a constitutional violation, petitioner must first establish a *prima facie* violation of his right to a speedy trial under the standard set for in *Barker v. Wingo*.  In that regard, petitioner has not presented any evidence that he asserted his right to a speedy trial before trial, and he has not shown how he was prejudiced by the nine-month period between arrest and trial.  Moreover, the ninth-month period from the date he was arrested and the date he was tried is less than the one-year period which would trigger a speedy trial analysis.  The state habeas court denied this claim on its merits (S.H.Tr. I:170; S.H.Tr. II:128; *Ex parte Bradden*, slip op. at 1), and that decision is not contrary to federal law.  This claim does not entitle petitioner to relief.

## XI.  JURY POOL

Petitioner next contends that the jury pool from which his jury panel, and jury, was chosen did not reflect a fair cross-section of the community.  In particular, petitioner asserts that 19% of the jury summons were issued to African-Americans, but only 8% of the people who reported for jury duty in Dallas County were African-American.  Petitioner further asserts that his original jury consisted of nine whites, two blacks, and one Indian but, after the Indian woman became ill and could not make it to court, she was replaced by another white person.  The state habeas court denied his claim, concluding that petitioner's claim failed to state facts upon which relief could be granted

and that petitioner's constitutional rights were not violated. (S.H.Tr. I:170, S.H.Tr. II:128). The Court of Criminal Appeals denied relief based on these findings. *Ex parte Bradden*, slip op. at 1. This decision is not contrary to federal law.

The State first contends that petitioner has failed to point to any facts that would entitle him to relief because petitioner cites statistics in a conclusory manner. Even accepting that the numbers that petitioner cites are correct, he has not proven that his constitutional rights were violated. The Supreme Court has held that the Sixth Amendment right to a jury trial requires that the jury be selected from a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 528-29 (1975). Therefore, jury venires must not systematically exclude distinctive groups in the community. *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979). In order to establish a *prima facie* Sixth Amendment fair cross-section violation, one must show that: 1) the group that was alleged to have been excluded is a distinctive group in the community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of this group in the community; and 3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Id.* at 364. However, the Supreme Court has noted that the Sixth Amendment does not require petit juries, as opposed to panels or venires, to reflect the composition of the community at large. *Lockhart v. McCree*, 476 U.S. 162, 173 (1986).

Petitioner has failed to establish a *prima facie* Sixth Amendment violation. While the Fifth Circuit has recognized that African-Americans are a distinctive group in the community, *McGinnis v. Johnson*, 181 F.3d 686, 690 (5th Cir. 1999), petitioner has failed to meet the other requirements of a *prima facie* violation of the Sixth Amendment. In particular, petitioner has, both at the state habeas level and here, stated statistics indicating that the number of African-Americans in the

venire from which his jury was chosen was lower relative to the number of African-Americans in the community. He has not, however, established that there was any systematic exclusion of African-Americans from jury venires in Dallas County. Rather, his complaint is that African-Americans were summoned to jury service, but did not report. A failure to report to jury service is not a systematic exclusion of African-Americans from jury venires by the State. Moreover, petitioner complains about the racial composition of his jury but, as noted earlier, the federal constitution does not require that a petit jury reflect the racial composition of the community. Petitioner is not entitled to relief based on this claim.

## XII. IMPEACHMENT EVIDENCE

Petitioner further contends that the trial court erred in permitting the prosecutor to impeach petitioner during his cross-examination of petitioner with a 1972 conviction for robbery. Petitioner argues that, under Texas Rule of Evidence 609, the 1972 conviction was too remote in time to be used for impeachment purposes because more than ten years had elapsed between when he was released from prison in 1977 and his trial in the case at hand.

In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Moreover, in federal habeas actions, a state court's evidentiary rulings will mandate relief only when an error is so extreme that it constitutes a denial of fundamental fairness. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999); *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986). Rule 609(b) prohibits the use of a conviction for impeachment purposes if the date of the conviction or release from confinement, whichever is later, is more than ten years earlier, unless the trial court determines that

the probative value of the conviction substantially outweighs its prejudicial effect. *See* TEX. R. EVID. 609(b). The trial court overruled petitioner's objection to the use of the 1972 conviction (R. I;151-52). Petitioner has not shown that even if this was error, it was so extreme that it constitutes a denial of fundamental fairness. Petitioner was also impeached with a more recent conviction for aggravated robbery. Petitioner has not shown that he was denied fundamental fairness. On direct appeal, the Tenth District Court of Appeals ruled that the trial court had not erred in permitting evidence of the 1972 conviction to be used for impeachment purposes. *Bradden*, slip op. at 6-8. This decision is not contrary to federal relief. This ground for relief be denied.

## XIII. STATE CONSIDERATION OF CLAIMS

Petitioner raised his claims on direct appeal and in his state writs. The Tenth District Court of Appeals affirmed petitioner's convictions on direct appeal, and the Court of Criminal Appeals denied the state writs on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. These decisions at the state level are consistent with applicable Supreme Court precedent. The decisions involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## XIV. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## XV. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SO RECOMMENDED on this 3rd day of November, 2008.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE